Cook, Appellant, v. Johnson.

Argued October 31, 1934.

Before TREX-LER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD and PARKER, JJ.

*Joseph G. Feldman,* for appellant.

*Harold B. Beitler,* for appellee.

OPINION BY BALDRIGE, J., February 1, 1935:

This action in trespass was to recover for injuries caused by defendant's car hitting the plaintiff on October 11, 1933, at the intersection of 8th Street and Oregon Avenue, in the city of Philadelphia. Following the accident, the plaintiff was taken to the Methodist Hospital, where it was found that his head was cut and his body bruised. The next morning at 11:30 he was discharged from the hospital and returned to his home in a taxicab. About ten minutes after he arrived home, when he was lying on a couch, feeling "pretty dizzy" and experiencing pain from his injuries, a Mr. Alexander knocked at his door. He arose and let him in. Alexander told him he represented Johnson, the driver of the car which hit him. Cook gave Alexander his name, age, place of residence, and the details of the accident, which Alexander reduced to writing and Cook signed. Alexander then asked him to sign a release. Cook did not deny that he was able to read the release, but testified that he had asked Alexander to read it and he said there was no use in so doing, that if he (Cook) would sign it he would give him a check for his expenses and that he should go back to the hospital and he would help him with the doctor and medicine bills; that when he signed the

release there was a blotter over the top of it and he was only able to see the few lines where he was told to sign. After the paper was signed, Alexander gave him a check of the Keystone Automobile Club Casualty Company, payable to his order, in the sum of $50, which had written on its face: "For all claims against Charles W. Johnson arising out of accident 10-11-33;" it was signed "John R. Alexander, adjuster." Cook endorsed the check and placed it on a smoking stand. Shortly after Alexander took his departure, the appellant's niece entered the home, saw the check, and asked her uncle if he wanted to get it cashed. When he replied in the affirmative, she had it cashed at a nearby store. On October 31st, the plaintiff, through his attorney, returned the $50 to the Keystone Automobile Club Casualty Company, and requested the return of the release. The casualty company refused to accept the money or return the release. As a consequence, this suit followed. Binding instructions were given to find a verdict for defendant.

There is no doubt that there was sufficient evidence to submit to the jury the question of defendant's liability on the ground of negligence. The real controversy in the case is whether the release was procured by fraud. It was the right and duty of the court to determine primarily if the evidence was sufficient in quality to go to the jury on that question: DeDouglas v. Union Traction Co., 198 Pa. 430, 48 A. 262.

In Ralston et ux. v. Phila. R. T. Co., 267 Pa. 257, 110 A. 329, the plaintiff executed a release, which he alleged was procured by fraud and was folded in such a way that he could not observe its contents; that the agent represented to him that it was a receipt for money paid to date and that he would return later and make other payments; that he did not read it before he signed it as the agent "wouldn't let me." The cases dealing with the procuring of a release through

fraud or misrepresentation are collated and fully discussed therein. The conclusion reached is accurately stated in the syllabus in the following language:

"Where, in a negligence case, defendant sets up a release of damages executed by plaintiff, and the latter seeks to have the jury disregard it, and the essential facts in regard to its execution are in dispute, the burden is on plaintiff to prove the facts upon which he relies, beyond a reasonable doubt, by evidence which is clear, precise and indubitable, and by witnesses who are credible, who distinctly remember the facts to which they testify, and narrate the details exactly." The principle announced in that case has been followed in Horsey v. Ciaroro, 280 Pa. 513, 124 A. 677, and Keys, Admrx. v. Hanscom Bros., Inc., 288 Pa. 389, 135 A. 860, and we think they rule this case.

The plaintiff evidently was not an ignorant man. While he was unemployed at the time of the accident, he had formerly owned and operated a truck, and had received checks for his services. The photostatic copy of the check offered in evidence shows that all the writing was very legible. If Cook had taken the trouble to look at this check before having it cashed, he would at once have seen, if there was any previous doubt in his mind, the nature and effect of this transaction. It gave him full notice also that Alexander was representing, as an adjuster, a casualty company. There is no indication whatever on the check of any attempt to impose upon or deceive the plaintiff. Alexander testified that he handed Cook the statement, which he read, and he then gave him the release with the amount inserted that Cook suggested he should receive for his injuries; that Cook carefully read and then signed it.

While the plaintiff's injuries were no doubt painful, they were not of a serious nature, as he remained in bed "around four days" after the accident and was visited by a doctor on six different occasions. He

410

thereafter visited the doctor's office four or five times. The doctor said that it was his recollection that the plaintiff was in bed for two days and visited his office five times.

We concur with the view of the lower court that the plaintiff's evidence was not of such a character as to warrant setting aside the release on the ground of fraud.

Judgment is affirmed.